Donald and Irene WAHLSTROM,
Administrators of the Estate of
Scott Wahlstrom, Plaintiffs,

v.

KAWASAKI HEAVY INDUSTRIES,
LTD., Kawasaki Motors Corp., U.S.A.,
Kawasaki Motors Manufacturing Corp.,
U.S.A., Defendants.

Civ. No. H–90–481 (AHN).

United States District Court,
D. Connecticut.

Aug. 17, 1992.

Richard L. Newman, Cohen & Wolf, Danbury, Conn., for plaintiffs.

William I. Garfinkel and Trudie R. Hamilton, Carmody & Torrance, Waterbury, Conn., for defendants.

NEVAS, District Judge.

After review and over objection, the Magistrate's Recommended Ruling is approved, adopted and ratified.

SO ORDERED.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LATIMER, United States Magistrate Judge.

Plaintiffs bring this diversity action, cf. 28 U.S.C. § 1332(a), as administrators of the estate of Scott Wahlstrom, their 17–year old son who died leaving no dependents. They seek wrongful death damages under the Connecticut Product Liability Act, Conn.Gen.Stat. § 52–572m, *et seq.*, including punitive damages, from the defendant Kawasaki companies that designed, manufactured and distributed the rented jet ski their son was using when he was killed in a collision with a motor boat on the Thames River, in Ledyard, Connecticut.

Defendants have moved for summary judgment, cf. Rule 56(c), Fed.R.Civ.P., arguing that plaintiffs' state law claim must be dismissed because the instant action involves a collision between two pleasure craft on navigable waters, and is therefore governed by this court's admiralty jurisdiction. Cf. 28 U.S.C. § 1333(1); see also *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982); *Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990). With admiralty jurisdiction controlling, defendants further argue that the general maritime law, a uniform body of tort common law identified by the Supreme Court in *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), must be applied—meaning in this case that pertinent federal decisional law would apply, automatically precluding any reliance on Connecticut state tort law. See, e.g., *Kermarec v. Compagnie Generale*, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); *Neal v. Barisich, Inc.*, 707 F.Supp. 862 (E.D.La.), *aff'd*, 889 F.2d 273 (5 Cir.1989). Defendants also assert that when the general maritime law is applied to the present case, recovery of any wrongful death damages is barred because plaintiffs are not dependents of the decedent, see *Truehart v. Blandon*, 672 F.Supp. 929 (E.D.La.1987) and punitive damages are also barred since no such award can be made when compensatory damages are unavailable, see *Neal v. Barisich, Inc., supra* at 873. For the reasons stated below, defendants' motion for summary judgment is granted.

■ As a threshold matter, defendants are correct that plaintiffs' attempted wrongful death claim is governed by admiralty because this case, involving a collision between a jet ski and a motor boat, satisfies the Supreme Court's twofold jurisdictional test: (1) the alleged tort occurred on a navigable waterway; and (2) it bears a significant relationship to a traditional maritime activity. Cf. *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). First, it is undisputed that the Thames River is a navigable waterway for purposes of admiralty jurisdiction, as it is capable of serving as "a highway for maritime commerce". *The Daniel Ball*, 77 U.S. (10 Wall) 557, 19 L.Ed. 999 (1870). Second, contrary to plaintiffs' position, it makes little difference that the decedent was killed while operating a recreational jet ski: such a craft can and properly should be defined as a "vessel" under current maritime jurisdictional analysis. See 1 U.S.C. § 3 ("the word 'vessel' includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water"); cf. also *Keys Jet Ski, Inc. v. Kays*, 893 F.2d 1225 (11 Cir.1990); *Matter of Guglielmo*, 897 F.2d 58 (2 Cir.1990). In this regard, the operation of a motorized jet ski, like a small motor boat, sufficiently implicates traditional maritime activities. *Foremost, supra*, 457 U.S. at 676, 102 S.Ct. at 2659. As plaintiffs' complaint essentially alleges that decedent was killed as a result of "a collision between two vessels on navigable waters ... [it] properly states a claim within the admiralty jurisdiction of [this] federal court", *id.* at 677, 102 S.Ct. at 2659; see also *Sisson, supra*, 497 U.S. at ——, 110 S.Ct. at 2897 (holding that "navigation is an example, rather than a sole instance, of conduct that is substantially related to traditional maritime activity"). It is important to note that this conclusion is not affected by either: (1) plaintiffs' deliberate reliance on diversity of citizenship, and not admiralty, as a basis of federal jurisdiction, because maritime principles would govern in any event, cf. *Kermarec, supra*, 358 U.S. at 628, 79 S.Ct. at 408; or (2) plaintiffs' specific assertion of a product liability claim, as that theory of liability is currently incorporated within the law of admiralty, cf. *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986).

■ Finding that admiralty jurisdiction exists here does not, however, require that defendants' "automatic preclusion" argument be addressed at this time. Admittedly, defendants do offer strong reasons for establishing a bright line rule designed to exclude the use of state wrongful death

statutes for deaths occurring within territorial waters. See, e.g., *Moragne, supra,* 398 U.S. at 401, n. 15, 90 S.Ct. at 1788 n. 15; *Neal v. Barisich, Inc., supra* at 866–867; *Matter of S.S. Helena,* 529 F.2d 744, 752 (5 Cir.1976). However, "it appears that [that] choice of law question is not relevant to disposition of [the now pending] summary judgment motion ... [because plaintiffs' state claims] are not permitted [in any event] where they would be in conflict with the applicable substantive admiralty law". *Icelandic Coast Guard v. United Technologies Corp.,* 722 F.Supp. 942, 949 (D.Conn. 1989) (Cabranes, J.); see also *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 222, 106 S.Ct. 2485, 2494, 91 L.Ed.2d 174 (1986) (holding that "reverse-Erie" doctrine requires that substantive remedies afforded by state law conform to federal maritime standards); *Complaint of DFDS Seaways (Bahamas) Ltd.,* 684 F.Supp. 1160 (S.D.N.Y.1987) ("It is well settled that federal maritime law is to be applied to the exclusion of *conflicting* state law even in state courts" (emphasis in original and citations omitted)). In other words, defendants' call for preemption is mandated here not by application of abstract choice-between-laws principles but by the force of the Supremacy Clause standing alone. Cf. U.S. Const. art. VI. As defendants correctly point out, Connecticut state tort law permits the recovery of damages brought by the beneficiaries of a decedent without regard for dependence. Cf. Conn.Gen.Stat. § 52–572m, *et seq.* In contrast, the general maritime law does not allow the nondependents of a decedent who is not a seaman to recover wrongful death damages for his death arising in state territorial waters. See, e.g., *Anderson v. Whittaker, Corp.,* 692 F.Supp. 764, 770–773 (W.D.Mich.1988), *rev'd in part on other grounds,* 894 F.2d 804 (6 Cir.1990) (nondependent parents of two recreational boaters killed after their boat capsized on Lake Michigan cannot recover wrongful death damages in the form of loss of society); *Truehart, supra* at 936–938 (nondependent parents and siblings of pleasure boat passenger killed within navigable waters cannot maintain action for loss of society). This federal law

difference is independently sufficient to require dismissal of plaintiffs' state law claims "as a matter of law", Rule 56(c), Fed.R.Civ.P.

At common law, it was assumed that all personal injury actions died with the plaintiff. Recognizing the unfairness of such an inflexible rule, state legislatures began to enact wrongful death statutes. These wrongful death statutes permitted the survivors of a decedent to seek damages for the loss *they* suffered as a result of the death. See *Sea–Land Services, Inc. v. Gaudet,* 414 U.S. 573, 584, 94 S.Ct. 806, 814, 39 L.Ed.2d 9 (1974). Such recovery typically included pecuniary damages in the form of loss of support and services, medical and funeral expenses, and non-pecuniary damages such as loss of society. *Id.* In turn, courts in admiralty often applied these state statutes to preserve suits for death at sea. In *The Harrisburg,* 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), the Supreme Court acknowledged this statutory trend but adhered to the position that in the absence of such an applicable statute, the general maritime law does not recognize a cause of action for wrongful death. The practical effect of this decision was to foreclose recovery by representatives of a decedent killed on the high seas due to a breach of general maritime law, but allow recovery for those killed on territorial waters where state tort law generally applied. Adding further to this confusion was the fact that even where a state statute applied, the action was still subject to the many substantive limitations imposed by state law. See *The Tungus v. Skovgaard,* 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959) (state statute denying a cause of action based on unseaworthiness, i.e., a form of strict liability for shipowners).

In 1920, Congress attempted to provide uniformity with respect to certain federal maritime interests by passing the Death on the High Seas Act, 46 U.S.C. § 761, *et seq.,* ("DOHSA") and the Jones Act, 46 U.S.C. § 688. Under the DOHSA, Congress bypassed the rule in *The Harrisburg* by establishing a statutory right of action for loss of pecuniary damages by the beneficia-

ries of a decedent killed outside state territorial waters. The DOHSA reads in part:

> "Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued."

46 U.S.C. § 761. As well, wishing to protect those who ventured out to sea for a living, Congress enacted the Jones Act on behalf of seamen and their families, which was modeled after the older Federal Employers' Liability Act, 45 U.S.C. §§ 51–59 ("FELA"), and provides in pertinent part:

> "[I]n the case of the death of a seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law ... [and] all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable."

46 U.S.C. § 688; see also *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964). Despite expanding the remedies available in admiralty, "this mixture of state and federal law amounted to statutory chaos", *Truehart, supra* at 932. Typical of such confusion was the anomaly identified in *Moragne, supra,* 398 U.S. at 395, 90 S.Ct. at 1785, that the dependent widow of a deceased longshoreman could not recover wrongful death damages based on a theory of unseaworthiness where his death occurred in state waters. This was so because the Jones Act and state law required a particular showing of negligence; while the DOHSA, though not limited as to bases of liability, extended only to deaths on the high seas. *Id.*

In *Moragne,* the Supreme Court finally recognized that an independent, nonstatutory right of recovery for wrongful death under the general maritime law was needed to eliminate the remedial void created by a patchwork of state and federal legislation. *Id.* at 409, 90 S.Ct. at 1792. In overruling *The Harrisburg,* the *Moragne* Court stated "that federal admiralty law should be 'a system of law coextensive with, and operating uniformly in, the whole country'", *id.* at 402, 90 S.Ct. at 1788 (quoting *The Lottawanna,* 88 U.S. (21 Wall), 558, 575, 22 L.Ed. 654 (1874)). Not surprisingly, this need for national uniformity has been the guiding principle in admiralty law ever since. *Miles v. Apex Marine Corp.,* 498 U.S. 19, ——, 111 S.Ct. 317, 327, 112 L.Ed.2d 275 (1990). The *Moragne* Court did make it a point not to delineate all the elements of its new general maritime cause of action for wrongful death. *Moragne, supra,* 398 U.S. at 408, 90 S.Ct. at 1792. Instead, the Court concluded that the task of establishing the parameters for this new admiralty cause of action should be left to the "further sifting through the lower courts in future litigation", *id.* On the specific question of intended wrongful death beneficiaries which is at issue here, however, the *Moragne* Court did not appear to reserve judgment. The case involved a dependent widow, and the Court's general maritime law analysis consistently made reference to only the *dependents* of the decedent as the proper class of beneficiaries in a wrongful death action. Cf. *Truehart, supra* at 932 (quoting *Moragne,* 398 U.S. at 382, 90 S.Ct. at 1778, "[I]n the case of death, those closest to him [the decedent]—usually spouse and children—seek to recover for their total loss on whom they depended").

This reading of *Moragne,* and sense of the Supreme Court's considered view, is even clearer from a review of the major post-*Moragne* decisions by the Court. Starting with *Sea–Land Services v. Gaudet, supra,* 414 U.S. at 590, 94 S.Ct. at 817, the Supreme Court held that the *dependent* wife of a longshoremen who was killed in state waters was entitled to nonpecuniary damages in the form of loss of

society even though the decedent had already obtained a judgment for his own personal injuries. Implicit in the *Gaudet* opinion was the understanding that only dependent beneficiaries could recover such damages. *Id.* at 583, 94 S.Ct. at 814 ("[T]he policy underlying the [wrongful death] remedy is to insure compensation of the *dependents* for their losses resulting from the decedent's death ...") (emphasis added); see also *Glod v. American President Lines, Ltd.*, 547 F.Supp. 183 (N.D.Cal. 1982). Then, in *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 623, 98 S.Ct. 2010, 2014, 56 L.Ed.2d 581 (1978), the Court held that in a general maritime action for wrongful death occurring on the high seas, recoverable damages must be governed exclusively by the DOHSA, which permitted only pecuniary losses, and a showing of financial *dependence* was a requirement under the DOHSA. *Id.* In *Offshore Logistics, Inc. v. Tallentire, supra*, 477 U.S. at 211, 106 S.Ct. at 2488, the Court settled any doubt as to whether the nondependents of a decedent killed on the high seas may recover loss of society damages. The Court there ruled that a wrongful death action founded on an applicable state statute (which theoretically might permit recovery by a nondependent) was preempted by the DOHSA—and where the DOHSA controls, nondependents could not recover such damages. *Id.* at 233, 106 S.Ct. at 2500. Finally, in *Miles v. Apex Marine Corp., supra*, 498 U.S. at ——, 111 S.Ct. at 320, the Court made clear that the *nondependent* mother of a deceased seamen could not recover for loss of society under the general maritime law. Applying the logic of *Higginbotham*, the Court held that where a wrongful death action for the death of a seaman is involved, the Jones Act, which permits the recovery of only pecuniary losses, must prescribe the type of damages available and cannot be supplemented by the general maritime law. *Id.* at ——, 111 S.Ct. at 325.

A collective reading of these cases reveals three points: (1) the Supreme Court has never held that a nondependent beneficiary may recover loss of society, i.e., nonpecuniary, damages in a general maritime wrongful death action; (2) the explicit language of the DOHSA does not permit the recovery of non-pecuniary damages, nor may such recovery be supplemented by state wrongful death statutes or the general maritime law where the DOHSA governs; and (3) the Jones Act does not provide wrongful death damages to the nondependent survivors of a deceased seaman. In response, with plaintiffs having first apparently abandoned at oral argument any conceivable claim for survival as opposed to wrongful death damages, cf. *Azzopardi v. Ocean Drilling & Exploration Co.*, 742 F.2d 890 (5 Cir.1984), plaintiffs basically assert that the Supreme Court and the Second Circuit have never expressly *prohibited* the recovery of wrongful death damages by the nondependents of a deceased nonseaman killed within territorial waters. Yet plaintiffs fail for good reason to point to any case which has *permitted* such recovery. In reality, those decisions which have dealt with this issue have uniformly held that dependency is a prerequisite to recovery. Compare *Anderson v. Whittaker, supra* at 770–773 (denying nondependents' wrongful death claim) and *Truehart, supra* at 936–938 (same) with *Evich v. Morris*, 819 F.2d 256 (9 Cir.), *cert. denied*, 484 U.S. 914, 108 S.Ct. 261, 98 L.Ed.2d 218 (1987) (permitting the recovery of a decedent's future lost income under a *survival* action, not a wrongful death claim). Beyond apparent consensus in the case law when closely examined, in any event, such decisions as *Truehart* and *Whittaker*, expressly supporting defendants' stance, are based on sound reasoning.

First, to deny wrongful death damages to Scott Wahlstrom's parents, who concededly were not financially dependent on their teenage son, lends more uniformity to admiralty jurisdiction. Cf. *Miles, supra*, 498 U.S. at ——, 111 S.Ct. at 327. As previously discussed, neither the Jones Act or the DOHSA affords nondependents such recovery; likewise, the general maritime law cannot supply such damages when either statute applies. Thus, in order to avoid the admiralty "patchwork" of remedial schemes common in pre-*Moragne* days, it would seem best to limit recovery here

even though this case is governed neither by the Jones Act or the DOHSA. See, e.g., *Truehart, supra* at 936; *Whittaker, supra* at 772.

Second, plaintiffs' attempts to distinguish *Miles* and similar cases on the basis that they involved seamen would appear unpersuasive. "[A]dmiralty courts have always shown a special solicitude for the welfare of seamen and their *families*", *Miles, supra,* 498 U.S. at ——, 111 S.Ct. at 327 (emphasis added). Yet in the face of this particular concern, Congress still decided that wrongful death damages under the Jones Act must be "limited to the sort of pecuniary losses that only dependents of a seaman are likely to suffer", *Whittaker, supra* at 772. It is true, the *Miles* court did note with respect to the Jones Act that it "sailed in occupied waters ... and was not free to expand remedies at will simply because it might work to the benefit of seamen and those dependent upon them", *id.,* 498 U.S. at ——, 111 S.Ct. at 327. As defendants here correctly point out, however, the impact of the considered and settled decision in *Miles* is to render it anomalous to award the nondependent survivor of a nonseaman a recovery which is patently denied to the nondependent beneficiary of a well-deserving seaman. In effect, to allow plaintiffs to recover wrongful death damages here simply because their son was not a Jones Act seaman would ironically, and improperly, leave the relatives of seamen as a less-favored class under admiralty. Cf. *Truehart, supra* at 937 (holding that because the "[g]eneral maritime law is its most generous to seamen, the wards of admiralty", it would refuse to "craft for nonseamen's survivors a remedy not available to seamen's survivors"); cf. also *Whittaker, supra* at 773.

Finally, because it is agreed that "somewhere a line must be drawn" to determine which beneficiaries may sue for damages in wrongful death, the line between dependents and nondependents seems to be "the most rational, efficient and fair", *Truehart, supra* at 938. Most notably, "[a] requirement of dependency creates a finite, determinable class of beneficiaries", *id.* This reasoning also found support in *Whittaker,* where the court stated, *id.* at 772:

"[I]t is inherent in the nature of wrongful death remedies that not every survivor is entitled to recover monetary damages. A line must be drawn; without the express terms of a statute to guide the Court, it must draw a boundary that is most in line with the purposes underlying creation of the remedy. This Court is in agreement with *Truehart* in concluding that a limit based upon dependence is in line with the philosophy of *Moragne* and subsequent cases."

Accordingly, the state claims asserted here by the parents of Scott Wahlstrom must be dismissed.

In light of the decision to grant judgment against plaintiffs' state wrongful death claim as a matter of law, any claim for punitive damages must also be dismissed. Cf. *Neal v. Barisich, Inc., supra* at 873 (holding that because punitive damages are non-pecuniary, a plaintiff has standing to seek them under the general maritime law only if having standing to seek other non-pecuniary losses); cf. also *Alcorn County, Miss. v. U.S. Interstate Supplies, Inc.,* 731 F.2d 1160, 1170 (5 Cir.1984).

Subject to review, cf. 28 U.S.C. § 636(b), defendants' pending motion for summary judgment is accordingly granted.

Dated at New Haven, Connecticut, this 7th day of April, 1992.