**Dorothy M. EMERY, and Norman Emery, Plaintiffs,**

v.

**The ROCK ISLAND BOATWORKS, INC., an Illinois corporation, Defendant.**

No. 93–4077.

United States District Court,
C.D. Illinois,
Rock Island Division.

March 18, 1994.

Frank R. Fuhr, Rock Island, IL, for plaintiffs.

Gary T. Sacks, The Boatmen's Tower, St. Louis, MO, for defendant.

### ORDER

MIHM, Chief Judge.

Pending before this Court is Defendant Rock Island Boatworks, Inc.'s Motion to Dismiss and/or for Summary Judgment with respect to Plaintiff Norman Emery's claim asserted in Count II of the Complaint. For the reasons set forth below, the Motion is Denied.

On August 10, 1992, Plaintiff Dorothy M. Emery was a passenger on the Defendant's boat, the Casino Rock Island. The Complaint alleges that Dorothy sustained injuries as a result of falling approximately eight feet through an open man-hole/scuttle hole located in an aisle or walkway for boat passengers. In Count II of the Complaint, Plaintiff Norman Emery seeks damages based on a negligence theory for loss of society and consortium caused by the injury to his wife, Dorothy.

In the Defendant's Motion, Rock Island Boatworks, Inc. argues that admiralty law applies in this case, and under a general maritime claim, the spouse of a passenger may not recover for loss of society and consortium from injuries sustained on navigable water.

### Jurisdiction

The Seventh Circuit recently set forth a three part test for determining admiralty jurisdiction. The Court must determine: (1) whether the incident giving rise to the injury occurred in navigable waters; (2) whether the incident posed a potential hazard to maritime commerce; and (3) whether the incident was substantially related to traditional maritime activity. *Great Lakes Dredge & Dock Co. v. City of Chicago,* 3 F.3d 225, 228 (7th Cir.1993). An affirmative answer to all three of these questions bring the claim under admiralty jurisdiction. *Great Lakes,* 3 F.3d at 228.

The Plaintiffs only argue that the incident giving rise to this action did not pose a potential hazard to maritime commerce, part two of the test. The Seventh Circuit stated that the question of whether a potential hazard exists does not depend on the particular facts of the case at bar. *Great Lakes,* 3 F.3d at 228. The Court "must assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity." *Great Lakes,* 3 F.3d at 228, *quoting Sisson v. Ruby,* 497 U.S. 358, 363, 110 S.Ct. 2892, 2896, 111 L.Ed.2d 292 (1990).

The *Sisson* case involved a fire that had broken out on a dock which harbored only recreational vessels. Even though there was only a remote possibility of an impact on maritime commerce, the Supreme Court found that possibility sufficient to find admiralty jurisdiction. *Sisson,* 497 U.S. at 363, 110 S.Ct. at 2896. The Seventh Circuit in analyzing *Sisson* presumed that the holding was based on the fact that a commercial vessel could have been docked at the marina or on the fact that the damage to the marina itself could have disrupted commercial maritime traffic. *Great Lakes,* 3 F.3d at 228. The Seventh Circuit also noted, alternatively, that "aquatic recreation *is* commerce.... [and] fires on pleasure boats generally, are likely to disrupt recreational activities on the water." *Great Lakes,* 3 F.3d at 228 n. 4. (emphasis in original).

In *Great Lakes,* the Seventh Circuit found a potential hazard to maritime commerce where pilings installed at bridge sites along the Chicago River punctured a tunnel running beneath the River. *Great Lakes,* 3 F.3d at 230.

Based on the above, this Court finds that admiralty jurisdiction applies to the facts of this case. In looking at the general features of this incident, the occurrence could potentially threaten maritime commerce. For example, suppose the pilot or other essential

crew member had a similar mishap while piloting the vessel within the channel of the Mississippi River. Even where a passenger is involved, as here, a personal injury aboard the vessel caused by the negligence of its owner carries the potential of necessitating extraordinary rescue measures affecting commerce on the River. In addition, this Court is convinced that the type of recreational activities occurring on the vessel involved in this litigation constitutes maritime commerce independent of barge or other commercial traffic on the River.

Therefore, the Court finds that admiralty jurisdiction applies to this case.

### Loss of Society and Maritime Law

 The next issue presented in this case is whether the spouse of a injured passenger can properly bring a general maritime negligence action against the owner of a vessel seeking loss of society damages.

In researching this issue, the Court has uncovered a labyrinth of factual scenarios and legal theories from various courts yielding different results on whether loss of society claims may be brought under admiralty law. Some courts have allowed and some courts have precluded such claims under admiralty law depending on the legal theory and the specific facts alleged in the case. For example, some courts have distinguished admiralty claims brought under statutory as opposed to common law theories, brought by seamen as opposed to longshoremen, brought by neither seamen nor longshoremen, brought against employers as opposed to third parties, and brought as a result of injuries occurring in territorial waters as opposed to on the high seas. The significance of these various distinctions have led to courts reaching different results on the issue of awarding loss of society damages under admiralty law. *See e.g.*, *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990) (loss of society damages not recoverable in wrongful death action brought by non-dependent parent against vessel owner under the Jones Act and general maritime law for injuries to her seaman son while docked at an American port); *American Export Lines, Inc. v. Alvez*, 446

U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980) (loss of society damages recoverable to spouse of injured longshoreman in personal injury action brought under general maritime law in territorial waters); *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 622, 98 S.Ct. 2010, 2013, 56 L.Ed.2d 581 (1978) (loss of society damages not recoverable in wrongful death action brought under general maritime law by widows of passengers of fatal helicopter crash 100 miles offshore because Death on High Seas Act [DOHSA] limits damages to pecuniary losses); *Sea–Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974) (loss of society damages recoverable in wrongful death action brought under general maritime law by spouse of injured longshoreman in territorial waters); *Murray v. Anthony J. Bertucci Const. Co., Inc.*, 958 F.2d 127 (5th Cir.1992) (loss of society damages not allowed in personal injury action brought under general maritime law by spouse of seaman injured in territorial waters); *Shield v. Bayliner Marine Corp.*, 822 F.Supp. 81 (D.C.Conn.1993) (loss of enjoyment of life not recoverable in action brought by representative of victim killed in pleasure boating accident in territorial waters under general maritime law); *Wahlstrom v. Kawasaki Heavy Industries, Ltd.*, 800 F.Supp. 1061 (D.C.Conn.1992) (non-dependent parents of deceased non-seaman killed within territorial waters cannot recover wrongful death damages in action brought under general maritime law); *Sugden v. Puget Sound Tug & Barge Co.*, 796 F.Supp. 455 (W.D.Wash.1992) (loss of society damages recoverable in wrongful death action brought under general maritime law by family members of seaman against the defendant shipyard that was not the seaman's employer).

At the outset, the statutes relevant to this discussion should be noted. The Jones Act incorporated the Federal Employer's Liability Act [FELA] to create a wrongful death action for representatives of seamen killed in the course of employment. 46 U.S.C.App. § 688. The Death on the High Seas Act [DOHSA] created a similar cause of action for representatives of anyone killed on the high seas. 46 U.S.C.App. § 761 *et seq.*

In *Miles*, the Supreme Court denied loss of society damages to the parents of an injured seaman. The Supreme Court's decision in the *Miles* case turned on a finding that both the DOHSA and the Jones Act foreclosed recovery for non-pecuniary losses in wrongful death actions. *Miles*, 498 U.S. at 31–32, 111 S.Ct. at 325. The *Miles* court quoted the earlier *Higginbotham* case for the proposition that, once Congress directly addresses the question of damages as it did in the DOHSA, courts may not " 'supplement' Congress' answer so thoroughly that the Act becomes meaningless." *Miles*, 498 U.S. at 31, 111 S.Ct. at 325, *quoting Higginbotham*, 436 U.S. at 625, 98 S.Ct. at 2015. For reasons of uniformity, therefore, the *Miles* court concluded that an action based on the wrongful death of a seaman is limited to pecuniary losses whether brought under the DOHSA, the Jones Act, or the general maritime law. *Miles*, 498 U.S. at 29–34, 111 S.Ct. at 324–26.

In the interest of uniformity in admiralty law, the Supreme Court in *Miles* and *Higginbotham* limited the scope of recovery under the judicially created general maritime law to that of overlapping statutory law. The basis of these opinions turned on the fact that Congress had directly addressed the scope of recovery in statutes creating a cause of action based on the facts alleged, the DOHSA and the Jones Act, and the Supreme Court refused to expand relief beyond that set forth in the statutes through the application of a judicially created cause of action to the extent that the relief would usurp the congressional Act. The Supreme Court in *Miles* and *Higginbotham*, however, did not reach the issue of remedies available under the general maritime law in cases where statutory law does not overlap a general maritime claim. This reading of the cases explains the Supreme Court's statement in *Miles* limiting the application of *Gaudet* to injuries occurring "only in territorial waters, and ... only to longshoremen." *Miles*, 498 U.S. at 31–32, 111 S.Ct. at 325. This reading is also consistent with the Supreme Court's statement in *Higginbotham* distinguishing *Gaudet* on the grounds that the accident in the later case took place in territorial waters where the DOHSA does not apply.

*Higginbotham*, 436 U.S. at 622, 98 S.Ct. at 2013.

The decision in *Sugden* turned on this analysis of the *Miles* and *Higginbotham* cases. In *Sugden*, the court noted that the primary focus of the Supreme Court's reasoning in *Miles* was the need for uniformity among the various actions for the wrongful death of a seamen. *Sugden*, 796 F.Supp. at 457. The *Sugden* court stated that the Supreme Court in *Miles* did not reach the issue of whether family members of a deceased Jones Act seaman could recover non-pecuniary losses in a wrongful death action under the general maritime law from a defendant who was not the decedent's employer. In dicta, the *Sugden* court stated that the plaintiff had no right to non-pecuniary damages from her late husband's employer. *Sugden*, 796 F.Supp. at 457. For purposes of the action brought in the *Sugden* case, the plaintiff's husband was not a Jones Act seaman because the action was brought against a third party. In other words, the *Sugden* court held that the concerns of uniformity addressed in *Miles* do not exist where the statutory law does not apply, and therefore, the principles of the *Gaudet* case, not the *Miles* case, control. *Sugden*, 796 F.Supp. at 457.

In the *Shield* case, cited by the Defendant, the court applied general maritime law in an action brought by the representative of a victim fatally injured while taking a pleasure ride on a boat in territorial waters, the Potomac River. The DOHSA and the Jones Act do not provide a cause of action based on these facts. On the issue of the scope of recovery in a general maritime claim, the *Shield* court looked to the scope of recovery allowed under the DOHSA and the Jones Act and reasoned that in the interest of "uniformity in maritime law, plaintiff may not recover damages for loss of enjoyment of life merely because the decedent was not a seaman and died in territorial waters." *Shield*, 822 F.Supp. at 83–84, *citing Miles*.

The Defendant also cited the *Wahlstrom* case. That case involved a wrongful death action by a non-dependent of a deceased non-seaman killed within territorial waters. The *Wahlstrom* court limited the scope of recov-

ery in that case even though the case was not governed by the DOHSA or the Jones Act. *Wahlstrom*, 800 F.Supp. at 1065–66. In making its decision, the *Wahlstrom* court distinguished between plaintiffs who were dependents from those who were non-dependents. *Wahlstrom*, 800 F.Supp. at 1066. The *Wahlstrom* court held that the latter could not recover non-pecuniary losses in a general maritime law claim.

The issue for this Court is whether to limit remedies under the judicially created general maritime law to the statutory remedies set forth in the DOHSA and the Jones Act in situations where the statutory causes of action would not apply to the facts of the case. In other words should the court adopt the scope of statutory remedies to situations where the statute was not intended to be applied.

This Court reads the *Miles* and the *Higginbotham* cases as standing for the proposition that general maritime law cannot supply more expansive damages in cases where either the DOHSA or the Jones Act apply. Based on this Court's understanding of the *Miles* and *Higginbotham* cases, the Supreme Court expressed a concern for uniformity in situations where the statutory law and the common law overlapped and conflicted. This Court finds nothing in *Miles* or *Higginbotham* limiting the scope of recovery in an action brought under a common law legal theory in situations where the facts of the case would not give rise to a cause of action under the admiralty statutes.

Therefore, the Court finds that the *Shield* and *Wahlstrom* courts read the Supreme Court's holdings in *Miles* and *Higginbotham* too broadly. In situations, such as here, where the plaintiff does not have a cause of action available against the defendant under the DOHSA or the Jones Act, the concerns for uniformity, as expressed in *Miles* and *Higginbotham*, simply do not exist. For this reason, this Court finds the reasoning in *Sugden* more convincing.

### CONCLUSION

For the reasons set forth above, Defendant Rock Island Boatwork's, Inc.'s Motion to Dismiss and/or for Summary Judgment with respect to Plaintiff Norman Emery's claim in Count II of the Complaint is Denied. This case is referred to the Magistrate Judge for further proceedings.