781 So.2d 589 (2001)
Hubern DOXEY
v.
LAKE CHARLES PILOTS, INC.
No. 00 0530.
Court of Appeal of Louisiana, Third Circuit.
January 31, 2001.
Writ Denied May 4, 2001.
*590 J.B. Jones III, Jones Law Firm, Cameron, LA, Counsel for Plaintiff/Appellant Hubern Doxey.
Kenneth Michael Wright, Lake Charles, LA, Counsel for Defendant/Appellee Lake Charles Pilots, Inc.
Court composed of Chief Judge DOUCET, Judge SULLIVAN, and Judge GREMILLION.
GREMILLION, Judge.
This matter is on remand from the Louisiana Supreme Court for briefing, argument, and opinion. We originally granted writs in favor of the plaintiff, Hubern Doxey, finding that the trial court erred in ruling that he could not meet the jurisdictional limits for a jury trial based on a finding that punitive damages were not available under general maritime law. See an unpublished writ 00-0530 (La.App. 3 Cir. 5/17/00). Thereafter, the defendant, Lake Charles Pilots, Inc., sought supervisory writs from the supreme court, which granted the writ and remanded the matter to us. For the following reasons, we affirm our granting of Doxey's writ because we find that punitive damages are available under general maritime law under the facts at issue.

FACTS
On February 26, 1999, Doxey was attempting to launch his sixteen-foot boat into the Calcasieu Ship Channel from a boat launch located at the jetties in Cameron, Cameron Parish, Louisiana. After he had backed his boat trailer down the launch, but before he could release the boat from the trailer, the wake from a passing vessel lifted the truck and trailer up and then pulled them down into the channel as the water was sucked out from underneath them. The damage from the salt water caused Doxey's insurance company to total the truck. The name of the vessel which allegedly caused this damage was the M/V OLYMPIC FLAIR.
Doxey filed suit against Lake Charles Pilots alleging that the pilot in control of the M/V OLYMPIC FLAIR at the time of this incident acted in a wanton and reckless manner, which amounted to a conscious disregard of his rights. Since his damages were caused by a vessel on navigable water, Doxey further alleged that admiralty jurisdiction existed under the Admiralty Extension Act, 46 U.S.C. 740. The damages sought by him were comprised of the value of his truck, economic loss from being unable to work as a commercial fisherman, mental anguish, punitive damages under general maritime law, and any other damages proved at trial. Doxey further prayed for a trial by jury.
*591 Lake Charles Pilots answered denying liability. It further argued that Doxey was not entitled to a jury trial pursuant to La.Code Civ.P. art. 1732(6) since he alleged a claim under admiralty law. Thereafter, Doxey filed a Motion for an Order of Jury Trial, alleging that it was solely his choice to decide whether his claim was heard by a jury. Prior to the hearing on the motion, Doxey's deposition was taken at the insistence of Lake Charles Pilots. During his testimony, he admitted that his pecuniary damages resulting from this incident probably totaled less than $25,000. On February 14, 2000, the trial court denied Doxey's motion and ruled that he was not entitled to a jury trial. A judgment denying the motion was signed on March 15, 2000.
On an application for supervisory writs, we granted the writ finding that the trial court erred in ruling that Doxey could not meet the $50,000 jurisdictional limit for a jury trial on the grounds that punitive damages were unavailable under general maritime law. The trial court's ruling was reversed and the matter was remanded for further proceedings. Thereafter, Lake Charles Pilots applied for writ of certiorari and/or supervisory writs from the Louisiana Supreme Court. That court granted the writ and remanded the matter to this court for briefing, argument, and opinion. Following the remand, an order was granted by this court staying all proceedings in the trial court pending this appeal.

ISSUE
The issue before this court is whether punitive damages are available under general maritime law.

DISCUSSION
Pursuant to the Admiralty Extension Act, admiralty jurisdiction extends to this matter since the damage was caused by a vessel on navigable waters. 46 U.S.C.A.App. § 740 (1994); In re Amtrak "Sunset Limited" Train Crash, 121 F.3d 1421 (11th Cir.1997), cert. denied sub nom, Altosino v. Warrior & Gulf Navigation Co., 522 U.S. 1110, 118 S.Ct. 1041, 140 L.Ed.2d 106 (1998). Accordingly, substantive admiralty law applies. Yamaha Motor Corp., U.S.A., v. Calhoun, 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996).
We will first review the federal cases dealing with the availability of punitive damages under general maritime law. In Miles v. Apex Marine Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), the United States Supreme Court clarified that its prior holding in Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), created a general maritime cause of action for the wrongful death of a seaman, even when the death occurred in territorial waters. Prior to reaching a decision, the Court reviewed its decision in Moragne thoroughly. The main theme of Moragne was the need for uniformity in the exercise of admiralty jurisdiction. It pointed out that the rise of unseaworthiness as a theory of recovery under the Death on the High Seas Act (DOHSA) had resulted in the development of three anomalies in maritime law, upsetting the uniformity previously existing when negligence was the main theory of recovery in maritime wrongful death actions.[1] In order to reestablish *592 that uniformity, the Court overruled The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), which held that there was no cause of action for wrongful death under general maritime law. The Court in Miles, stated:
This result was not only consistent with the general policy of both 1920 Acts [the Jones Act and DOHSA] favoring wrongful death recovery, but also effectuated "the constitutionally based principal that federal admiralty law should be `a system of law coextensive with, and operating uniformly in, the whole country.'"
Miles, 498 U.S. at 27, 111 S.Ct. at 322-23, quoting Moragne, 398 U.S. at 402, 90 S.Ct. at 1788, quoting The Lottawanna, 21 Wall. 558, 575, 22 L.Ed. 654 (1874).
In confirming that Moragne created a general maritime wrongful death action, Miles applied the same reasoning used by that court to reach its decision. It stated:
We have described Moragne at length because it exemplifies the fundamental principles that guide our decision in this case. We no longer live in an era when seamen and their loved ones must look primarily to the courts as a source of substantive legal protection from injury and death; Congress and the States have legislated extensively in these areas. In this era, an admiralty court should look primarily to these legislative enactments for policy guidance. We may supplement these statutory remedies where doing so would achieve the uniform vindication of such policies consistent with our constitutional mandate, but we must also keep strictly within the limits imposed by Congress. Congress retains superior authority in these matters, and an admiralty court must be vigilant not to overstep the well-considered boundaries imposed by federal legislation. These statutes both direct and delimit our actions.
Miles, 498 U.S. at 27, 111 S.Ct. at 323.
In addressing the issue of whether damages for loss of society could be recovered in a general maritime wrongful death action, the Court once again strove for a decision which would be harmonious with federal admiralty law. In following the same analytical framework previously discussed, it reviewed legislative pronouncements in this area. DOHSA limited the damages recoverable in a wrongful death action to pecuniary damages. The Jones Act, through incorporation of the recovery provisions of the Federal Employers' Liability Act (FELA), also limited the damages recoverable under a wrongful death provision to pecuniary damages. Because the Jones Act wrongful death action was based on negligence, and not the strict liability theory of unseaworthiness as DOHSA, the Court stated:
It would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence. We must conclude that there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman.
... Today we restore a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law.
Id. at 32-33, 111 S.Ct. at 326.
The Court used a similar reasoning to find that a general maritime survival action *593 does not include recovery for a decedent's lost future income.
In Guevara v. Maritime Overseas Corp., 59 F.3d 1496, 1506-07 (5th Cir.1995), cert. denied, 516 U.S. 1046, 116 S.Ct. 706, 133 L.Ed.2d 662 (1996) (footnotes omitted), the Fifth Circuit, sitting en banc, applied the Miles' uniformity principles to find that punitive damages were no longer available for the willful nonpayment of maintenance and cure under general maritime law:
The analytical framework of Miles governs our approach to deciding damages issues in general maritime actions. In order to decide whether (and how) Miles applies to a case, a court must first evaluate the factual setting of the case and determine what statutory remedial measures, if any, apply in that context. If the situation is covered by a statute like the Jones Act or DOHSA, and the statute informs and limits the available damages, the statute directs and delimits the recovery available under the general maritime law as well. The general maritime law will not expand the available damages when Congress has spoken to the relief it deems appropriate or inappropriate. See Anderson v. Texaco, Inc., 797 F.Supp. 531, 536 (E.D.La.1992).
. . . .
Taking the analysis one step further, it should be clear that actions under the general maritime law for personal injury are also subject to the Miles uniformity principle, as non-fatal actions for personal injury to a seaman are covered by statute-i.e., the Jones Act. Thus, many courts have extended Miles' logic to prohibit the recovery of certain damages in personal injury factual settings that are covered by statute, even when these personal injury claims are brought under the general maritime law.
In light of Miles, the Guevara court held that the holding in Dyer v. Merry Shipping Co., 650 F.2d 622 (5th Cir.1981), that punitive damages were available in wrongful death cases brought under the unseaworthiness doctrine of general maritime law, was effectively overruled. Under the factual scenario in Dyer, had it been decided post-Miles, the Jones Act would have limited the type of remedies available.
The Guevara court recognized two types of maintenance and cure actions: a tort-like action which involves personal injury and a contract-like action which involves the loss of money. Because the tort-like maintenance and cure action requires that the seaman suffer a personal injury, the court found that it overlapped with the personal injury coverage of the Jones Act. Thus, the court held that Miles' damages uniformity principle applied to limit the damages available. It also found several reasons for denying punitive damages pursuant to the contractlike maintenance and cure action: (1) It would be peculiar to award punitive damages to a seaman suffering a monetary loss, yet not award them to a seaman suffering from personal injury; (2) The development of federal admiralty law should harmonize with Congressional pronouncements in related legislative schemes; (3) The need for uniformity within the federal admiralty law; and (4) Breach of contract cases do not allow punitive damages.
In CEH, Inc. v. F/V Seafarer, 70 F.3d 694 (1st Cir.1995), the First Circuit held that punitive damages were available under the general maritime law in a case involving the reckless and willful destruction of property. The court noted that punitive damages had traditionally been recognized in general maritime actions where the defendant's "intentional or wanton and reckless conduct amounted to a *594 conscious disregard of the rights of others." Id. at 699 (citations omitted). In refusing to extend Miles so as to bar recovery for punitive damages in all general maritime cases, the court stated:
The Court's decision to "restore a uniform rule applicable to all actions for the wrongful death of a seaman," id., logically followed the principle espoused in Moragne, 398 U.S. at 401-02, 90 S.Ct. at 1788 (quoting The Lottawanna, 88 U.S. (21 Wall.) 558, 575, 22 L.Ed. 654 (1874)), to promote "uniformity [that] not only will further the concerns of both 1920 Acts but also will give effect to the constitutionally based principle that federal admiralty law should be `a system of law coextensive with, and operating uniformly in, the whole country.'" Though these principles of uniformity defy precise limits, we think it clear that the Supreme Court had in mind the need to defer to statutory enactments addressing like issues. As the Court reasoned: "In this era, an admiralty court should look primarily to these legislative enactments for policy guidance .... [and] must be vigilant not to overstep the well-considered boundaries imposed by federal legislation." Miles, 498 U.S. at 27, 111 S.Ct. at 322. Miles, therefore, does not, as defendants contend, signify a call for universal uniformity of maritime tort remedy, but rather emphasizes the importance of uniformity in the face of applicable legislation.
The cases post-Miles reflect this focus on relevant legislation. If the factual situation could support an action under either DOHSA or the Jones Act, then nonpecuniary relief is unavailable....
The import of this legislation in the context of personal injury has led some courts to bar nonpecuniary relief in circumstances addressed by the Jones Act, but involving non-Jones Act plaintiffs and defendants. See, e.g., Wahlstrom v. Kawasaki Heavy Industries, Ltd., 4 F.3d 1084, 1094 (2d Cir.1993) (concluding, based in large part on post-Miles authority, that representatives of a deceased nonseaman could not recover punitive damages under the general maritime law); Trahan v. Texaco, Inc., 625 So.2d 295, 297 (La.App. 4th Cir.1993) (dismissing a general maritime claim for loss of consortium brought by a seaman's spouse against nonemployer third-party defendants); but see, e.g., Emery v. Rock Island Boatworks, 847 F.Supp. 114, 117-18 (C.D.Ill.1994) (injured passenger's husband could recover nonpecuniary damages because his claim not cognizable under the Jones Act or DOHSA and, therefore, concerns for uniformity do not exist); Sugden v. Puget Sound Tug & Barge Co., 796 F.Supp. 455, 457 (W.D.Wash.1992) (wife of deceased seaman could recover nonpecuniary damages from non-employer because husband was not a Jones Act seaman for purposes of the suit).
Recently, the Fifth Circuit held that cure and maintenance claims, often considered to lack a statutory counterpart, see Anderson v. Texaco, Inc., 797 F.Supp. 531, 536 (E.D.La.1992), were, in fact, governed by Miles. Guevara v. Maritime Overseas Corp., 59 F.3d 1496, 1512 (5th Cir.1995) (en banc); see also Glynn v. Roy Al Boat Management Corp., 57 F.3d 1495 (9th Cir.1995). While at first glance, Guevara may seem to provide comfort to defendants, a closer reading supports our belief that Miles simply is irrelevant here.

Guevara followed the approach set forth in Miles. First, the court determined whether the factual setting of the case was covered by a statute like the Jones Act or DOHSA. 59 F.3d at 1506. Then, upon finding a statutory/general *595 maritime law overlap, the court invoked the "Miles damages uniformity principle" and excluded punitive damages. Id. at 1512-13. As the court reasoned, "[i]t makes little sense to create a fragmentation of admiralty law by allowing punitive damages in one class of maintenance and cure cases" while disallowing them in another. Id. at 1513.

Guevara does not assist defendants in any way. Rather, it merely illustrates, as do the other post-Miles cases cited above, that Miles may be applicable in those areas of maritime law where, at the very least, there is an overlap between statutory and decisional law. In the instant case, however, there is no legislation whatever that touches upon circumstances involving the reckless or willful destruction of property. Quite simply, Congress has not spoken, and we consequently see no basis under Miles for barring nonpecuniary relief here.
Defendant's contention that it would be peculiar to provide plaintiffs greater relief for property damage than for personal injury has some force. The concern expressed in Miles, however, was not with respect to an award of nonpecuniary damages in maritime cases in general, but with inconsistency with Congressional pronouncement. Miles does not mandate a uniform result for every maritime action and we are hesitant to ascribe to the Court a holding that goes well beyond any issue discussed there. See United States v. London, 66 F.3d 1227, 1241 (1st Cir.1995).
In sum, in the absence of any relevant legislation, we think that the uniformity principle enunciated in Miles is inapplicable. Therefore, plaintiffs are entitled to forms of relief traditionally available under the general maritime law, including punitive damages. Accordingly, we affirm the district court's determination that punitive damages are recoverable under plaintiff's general maritime claim.
Id. at 700-02 (citations omitted) (footnotes omitted).
In 1996, the United States Supreme Court decided Yamaha, 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578, in which it held that the general maritime wrongful death action recognized by Moragne did not supplant the state law remedies available to the parents of a twelve-year-old girl killed while riding a jet ski in territorial waters off the coast of Puerto Rico. Since the decedent was a nonseafarer and Congress had not prescribed the remedies available to such claimants in territorial waters, the Court held that the remedies available under the applicable state laws were not displaced by the general maritime wrongful death action recognized by Moragne. In reaching this decision, the Court stated:
When Congress has prescribed a comprehensive tort recovery regime to be uniformly applied, there is, we have generally recognized, no cause for enlargement of the damages statutorily provided. See Miles, 498 U.S. at 30-36, 111 S.Ct. at 324-328 (Jones Act, rather than general maritime law, determines damages recoverable in action for wrongful death of seamen); Offshore Logistics Inc. v. Tallentire, 477 U.S. 207, 232, 106 S.Ct. 2485, 2499, 91 L.Ed.2d 174 (1986) (DOHSA, which limits damages to pecuniary losses, may not be supplemented by nonpecuniary damages under a state wrongful-death statute); Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 624-625, 98 S.Ct. 2010, 2014-2015, 56 L.Ed.2d 581 (1978) (DOHSA precludes damages for loss of society under general maritime law). But Congress has not prescribed remedies for the wrongful deaths of nonseafarers in territorial waters. See Miles, 498 U.S. at 31, 111 *596 S.Ct. at 325. There is, however, a relevant congressional disposition. Section 7 of DOHSA states: "The provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this chapter." 46 U.S.C.App. § 767. This statement, by its terms, simply stops DOHSA from displacing state law in territorial waters. See Miles, 498 U.S. at 25, 111 S.Ct. at 321-322; Tallentire, 477 U.S. at 224-225, 106 S.Ct. at 2495-2496; Moragne, 398 U.S. at 397-398, 90 S.Ct. at 1785-1786. Taking into account what Congress sought to achieve, we preserve the application of state statutes to deaths within territorial waters.
Id. at 215-16, 116 S.Ct. at 628.
In Galveston County Navigation District No.1 v. Hopson Towing Co., Inc., 92 F.3d 353, 358-59 (5th Cir.1996) (footnotes omitted) (emphasis added), the court stated:
We held in Guevara that, particularly in light of Miles v. Apex Marine Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), punitive damages are no longer available in cases of willful nonpayment of maintenance and cure under the general maritime law. Id. at 1513. In so holding, we also addressed to some extent the availability of punitive damages in contexts beyond maintenance and cure. For example, we noted that, at least in certain scenarios, punitive damages are not available in a wrongful death action brought by the representative of a seaman under the unseaworthiness doctrine of general maritime law. Id. at 1507. We additionally observed that punitive damages are unavailable under the Jones Act. Id. at 1506 & n. 7. Therefore, in light of Guevara, there is arguably some question as to whether or not there remains a class of conduct, alluded to in Morales [v. Garijak, 829 F.2d 1355 (5th Cir.1987) ], for which "punitive damages and attorney's fees" are available under admiralty law.

In In re Horizon Cruises Litigation, 101 F.Supp.2d 204 (S.D.N.Y.2000), passengers on a cruise ship filed personal injury claims against a cruise line after contracting Legionnaires' Disease while sailing on its vessel. Some of the plaintiffs included a claim for punitive damages in their complaint. In holding that punitive damages were available in these personal injury claims involving non-seamen, the court stated:

Miles and Yamaha taken together counsel that where Congress has legislated with respect to a class of maritime cases, relief under state law as well as traditional admiralty remedies may be displaced in the interests of uniformity. However, Yamaha makes clear that this uniformity principle does not sweep away the common law unless Congress has spoken. Just as in Yamaha, where "Congress has not prescribed remedies for the wrongful deaths of nonseafarers in territorial waters," 516 U.S. at 215, 116 S.Ct. 619[ at 628], 133 L.Ed.2d 578, so in this case Congress has passed no law providing for claims by injured passengers or dictating the scope of relief they are entitled to.
Id. at 214.
The court concluded its discussion by stating, "Yamaha now makes it clear that principles of uniformity do not reach so broadly." Id.
In a recent case, Liner v. Dravo Basic Materials Co., 2000 WL 1693678 (E.D.La. Nov.7, 2000), the court denied the defendant's motion for partial summary judgment seeking to strike the plaintiffs' claims for loss of consortium and punitive damages. The non-seamen plaintiffs had suffered injury as the result of the allision of their recreational vessel with an *597 unmarked sunken barge in state territorial waters. Finding that Yamaha controlled, the court held that the plaintiffs' claims were governed by general maritime law, but would be supplemented by Louisiana law.
After examining Louisiana law, the court determined that it allowed the plaintiffs a claim for loss of consortium, but did not allow them a claim for punitive damages under the facts stated. However, recognizing that there was a trend in the general maritime law to allow punitive damage in the absence of an overlapping federal statute, the court also denied the motion for partial summary judgment as it pertained to punitive damages.
In In re Horizon Cruises Litigation, 101 F.Supp.2d 204 (S.D.N.Y.2000), plaintiffs brought suit after a defective whirlpool filter caused them to contract Legionnaire's (sic) Disease while aboard the defendant's cruise ship. The Court traced the long history of punitive damages in admiralty law and concluded that the thrust of the Miles decision "does not enunciate an absolute bar to recovery of punitive damages in all general maritime cases. Indeed, Miles does not signify a case for `universal uniformity of maritime tort remedy,' but rather `emphasizes the importance of uniformity in the face of applicable legislation.'" Id. at 213 (citations omitted) (emphasis added). Further, the Court found that Miles was not concerned with the awarding of non-pecuniary damages, but rather inconsistencies within statutory law. See id. Thus, in the interests of uniformity, Congressional legislation may displace both general maritime and State law. See id. at 213-14.
In addition, at least three decisions from this district have recognized that maritime plaintiffs who are not covered by a federal statute precluding such damages may have a claim for punitive damages. See Rutherford v. Mallard Bay Drilling, L.L.C., 2000 WL 805230 (E.D.La. June 21, 2000) (holding Longshoreman able to recover nonpecuniary damages because of continued vitality of Sea-Land Servs., Inc. v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974)); In the Matter of Denet Towing Serv., Inc., 1999 WL 329698 (E.D.La. May 21, 1999) (holding no indication in Miles of disapproval of long line of cases allowing punitive damages under general maritime law and punitive damages are available under general maritime law where there is no statutory overlap); Maritrans Operating Partners v. Diana T. M/V, 1999 WL 144458 (E.D.La. Mar.15, 1999) (holding punitive damage claim allowed when there is no overlap between general maritime law and a federal statute.).
While the Fifth Circuit in Guevara v. Maritime Overseas Corp., 59 F.3d 1496 (5th Cir.1995) (en banc), cert. denied, 516 U.S. 1046, 116 S.Ct. 706, 133 L.Ed.2d 662 (1996), held punitive damages unavailable in the very limited context of willful nonpayment of maintenance and cure under general maritime law, in Galveston County Navigation Dist. No. 1 v. Hopson Towing Co., Inc., 92 F.3d 353 (5th Cir.1996), the Court noted that "there is arguably some question as to whether or not there remains a class of conduct ... for which punitive damages ... are available under admiralty law." Galveston, 92 F.3d at 359 (citations omitted).
Thus, in the instant case, absent more guidance from above, the [plaintiffs] should have the opportunity to argue their case for punitive damages. The current trend in the case law supports a punitive damages claim under the general maritime law when there is no overlap with federal statutes. Since that is the *598 situation in the current case, summary judgment is not warranted to deny the [plaintiffs] the opportunity to present their claim for punitive damages.
Id. at 4-5 (footnote omitted).

DISCUSSION
Applying the analytical principles set out by Miles and the succeeding cases, we must "evaluate the factual setting of the case and determine what statutory remedial measures, if any apply in that context." Guevara, 59 F.3d at 1506. As in CEH, Inc., 70 F.3d 694, this matter involves the alleged willful or reckless destruction of property. Neither party has pointed to, nor are we aware of, any Congressional pronouncement touching upon this type of claim.
While we recognize the need for uniformity in federal admiralty law, we agree with the court in CEH, Inc., that "Miles... does not ... signify a call for universal uniformity of maritime tort remedy, but rather emphasizes the importance of uniformity in the face of applicable legislation." Id. at 700. Since there are no applicable statutory remedial measures limiting the damages available to Doxey under the factual scenario presented and punitive damages have traditionally been available under general maritime law, we find Miles' uniformity principles inapplicable. Accordingly, Doxey should be allowed to include his alleged punitive damages in the amount of damages suffered by him in order to meet the jurisdictional amount required for trial by jury.
We find further support for this position in the case of Strawder v. Zapata Haynie Corp., 94-453 (La.App. 3 Cir. 11/2/94); 649 So.2d 554, were we held that punitive damages would lie in a claim brought under general maritime law by the representative of a deceased seaman against a third party tortfeasor. Thus, we find that the trial court erred in denying Doxey's Motion for an Order of Jury Trial by ruling that he could not meet the jurisdictional limit for a jury trial on the grounds that punitive damages are unavailable under general maritime law. We remand the matter for further proceedings consistent with this opinion.
WRIT GRANTED.
NOTES
[1] In the first anomaly, general maritime law allowed a cause of action in territorial waters for unseaworthiness resulting in injury, but not death. In the second, DOHSA allowed a cause of action for death resulting from unseaworthiness on the high seas, but there was no corresponding action under general maritime law in territorial waters. In the final anomaly, in those states allowing a cause of action for wrongful death due to unseaworthiness, recovery could be had for the death of a longshoreman, but not a seaman, since the Jones Act pre-empted state law as it applied to seamen and only allowed recovery for death resulting from negligence.