Sharon Joyce WALKER, widow of Wade J. Trahan, on her own behalf and behalf of her minor children, Jason Dwayne Trahan and Josh Michael Trahan

v.

Armogene BRAUS and Terra Resources, Inc.

Civ. A. No. 88–0917.

United States District Court, E.D. Louisiana.

Aug. 2, 1994.

---

David B. Allen and Herbert W. Barnes, Samanie, Barnes & Allen, Houma, LA, for Josh Michael Trahan and Jason Dwayne Trahan.

Maurice P. Mathieu and Jay James Luke, Mathieu & Dagate, Houma, LA, for Sharon Joyce Walker, widow of Wade J. Trahan, on her own behalf & on behalf of her minor children, Jason Wayne Trahan & Josh Michael Trahan.

Harold Menton Wheelahan, III, Harold M. Wheelahan, III, PLC and Louis John Cosenza, New Orleans, LA, for Ungar & Wheelahan intervenor-plaintiff.

Guy E. Wall and Scott A. O'Connor, Gordon, Arata, McCollam & Duplantis, New Orleans, LA, for Terra Resources, Inc. and Terra Industries, Inc.

Charles E. Bourg, II, Morgan City, LA, for Armogene Braus.

Maurice P. Mathieu and Jay James Luke, Mathieu & Dagate, Houma, LA, for State Farm Fire & Cas. Co.

### *ORDER*

HEEBE, District Judge.

This cause came on for a hearing on a previous day on the motion of plaintiff, Sharon Joyce Walker, individually and on behalf of her minor children, Jason Dwayne Trahan and Josh Michael Trahan, to modify and/or amend the judgment entered on May 7, 1992, by assessing 20 percent of the fault of the accident which killed Wade J. Trahan, the plaintiff's husband, against defendant, Armogene Braus. Plaintiff has also been asked to show cause as to why the Court should not strike the damages awarded for past and future loss of society in light of the decision of the Fifth Circuit Court of Appeals in *Walker v. Braus,* 995 F.2d 77 (5th Cir.1993). Both parties have agreed to waive oral argument.

The Court has considered the legal memoranda submitted by the parties and is now fully advised in the premises and ready to rule. The Court finds that (1) Braus is 20 percent at fault for the death of Wade Trahan and (2) dependents of an operator of a fishing boat may not recover loss-of-society damages in a wrongful death action brought under general maritime law.

## I. FACTS

On January 5, 1988, a fishing vessel owned and operated by Wade Trahan was travelling at an excessive rate of speed on the wrong side of Turtle Bayou. Trahan's boat collided head-on with a vessel owned and operated by defendant, Armogene Braus;[1] Trahan was killed instantly. The collision occurred in Terrebonne Parish, Louisiana, approximately 160 feet north of the intersection between Turtle Bayou and the United Gas Pipeline Canal. The accident occurred on a sharp bend in the waterway, where the Bayou is narrow. The bend creates a blind spot which makes it difficult to see approaching traffic on the other side of the bend. At the time of the accident, Trahan was neither a seaman nor a longshoreman.

Trahan's vessel was a bass fishing boat approximately sixteen feet long and was propelled by a seventy horsepower outboard motor. Trahan was the driver and sole occupant of the boat. The Braus vessel was a twenty-five foot aluminum crew boat. Armogene Braus captained the boat on the day of the accident. Aboard Braus' boat were four workers for Action Oilfield Services, Inc., a company with whom defendant, Terra Resources, Inc. ("Terra"), contracted to provide labor in Terra's oil fields. Terra did not own any vessels. Accordingly, in June 1987, Terra began to charter vessels from Braus. Harold DeLeon, an employee of Terra, orally chartered the Braus vessel from Braus Marine Rentals, a boat rental company owned

by Braus. Braus operated his own boat when transporting workers and equipment.

At the time of the accident, the four workers were embarked on a job for Terra, and as a result, were the employees of Terra. *Walker*, 995 F.2d at 79. The four workers and Braus were riding in a rectangular cabin situated in the center of the boat, thereby reducing their capacity to see and hear oncoming vessels.

## II. PROCEDURAL HISTORY

On March 4, 1988, plaintiff brought a general maritime action pursuant to Fed. R.Civ.P. 9(h) against defendants, Armogene Braus and Terra Resources, Inc., to recover damages for the wrongful death of Wade Trahan.[2]

This Court bifurcated the trial on the issues of liability and damages. As to liability, the Court concluded the following: (1) Trahan was 70 percent contributorily negligent for piloting his craft at an excessive speed on an unsafe course: (2) Trahan was 10 percent contributorily negligent for failing to maintain an adequate lookout; (3) the Braus vessel was 10 percent at fault for failure to maintain an adequate lookout; and (4) the Braus vessel was 10 percent at fault for failing to sound its horn when approaching the blind corner.

On April 8, 1991, the Court entered findings of fact and conclusions of law assessing 80 percent of the fault against Trahan and 20 percent against Terra. The Court assessed the vessel's 20 percent fault against Terra on the ground that the dealings between Terra and Braus were consistent with a demise charter. Under a demise or bareboat charter, the owner relinquishes total control and full possession to the charterer. *Walker*, 995 F.2d at 81. A demise charter requires complete transfer of possession, command, and navigation of the vessel from the owner to the charterer. *Agrico Chemi-*

---

1. The Braus vessel was planing on top of the water, as opposed to pushing through the water. In order to be "on top," the Braus vessel had to be travelling at least twenty miles per hour. The evidence revealed that Trahan's fishing boat was travelling at a high rate of speed and trailing white water.

2. Braus counterclaimed to recover damages for damage to his boat against the estate of Wade Trahan and Trahan's insurer, State Farm Fire and Casualty Company. None of the issues raised in the counterclaim are presently before the Court.

cal Co. v. M/V Ben W. Martin, 664 F.2d 85, 91 (5th Cir.1981), citing Gaspard v. Diamond D. Drilling Co., 593 F.2d 605, 606 (5th Cir. 1979). The vessel is transferred to the charterer without crew, fuel, or supplies. Because the charterer's personnel operate and man the vessel while the charter is in existence, the charterer is responsible for the negligence of the vessel or its crew. Walker, 995 F.2d at 81. The conclusion of this Court that the arrangement between Terra and Braus amounted to a demise charter compelled the conclusion that Terra, as demise charterer, be charged with the fault of the Braus vessel.

On the issue of damages, this Court awarded $160,000 for loss of society, $87,831.19 for loss of support from the date of the accident until trial, $271,612.56 for future loss of support, and $5,270 for funeral expenses, all of which were reduced by 80 percent, the percentage of fault attributed to Wade Trahan. On May 7, 1992, this Court entered judgment for the plaintiffs in the amount of $104,-942.75.

Plaintiff and Terra appealed the judgment to the Fifth Circuit Court of Appeals. Braus did not appeal. On July 14, 1993, the Fifth Circuit reversed this Court's finding that Terra was a demise charterer of the Braus vessel. The Fifth Circuit stated that the factors relied upon by this Court were legally insufficient to create a bareboat charter. Walker, 995 F.2d at 82. The appellate court stated that "the law is well settled in this Circuit that the type of arrangement Terra had with Braus was for a ferry or taxi service, or a time charter; and, therefore, not a bareboat charter." Id. at 81. The circuit court reversed the judgment of this Court imposing liability on Terra and remanded for "further proceedings as may be appropriate." Id. at 82.

The Fifth Circuit also asked this Court to take a second look at the award for loss of society. The Court stated:

> Since the issue of consortium damages may well come up again in the further proceedings, we suggest to the trial court that recent case law developments indicate that the trend is to eliminate consortium damages across the board in maritime cases.

> \*     \*     \*     \*     \*     \*

> The Supreme Court has clearly indicated its desire to achieve uniformity of damage recoveries in the exercise of admiralty jurisdiction. Allowing [Trahan] to recover loss of consortium damages would directly contradict the policy of uniformity emphasized and relied on by the Court in Miles; and without expressly so deciding at this time, we acknowledge the strength of the argument that damages for loss of society may no longer be permitted in a general maritime wrongful death action involving the operator of a fishing boat.

Walker, 995 F.2d at 80, 82 (emphasis added).

On December 10, 1993, plaintiff moved to modify and/or amend this Court's judgment to reflect that Braus was 20 percent at fault for the collision. Because this Court originally held that the arrangement between Braus and Terra was a demise charter, this Court concluded that Terra was 20 percent at fault for the death of Trahan. As a result, the Court did not have to address the extent of Braus' liability for Trahan's death. The Fifth Circuit's subsequent reversal of this finding and the dismissal of Terra from the case prompted the filing of plaintiff's motion to include Braus in the judgment and to assess against him the 20 percent fault originally assessed against Terra. On January 31, 1994, Braus filed an opposition to the motion to modify and/or amend the judgment and suggested that the Court reconsider its findings that the Braus vessel was 10 percent negligent for failing to maintain a proper lookout and 10 percent negligent for failing to sound a signal as it approached a blind bend.

In addition, pursuant to the instructions of the Fifth Circuit, this Court asked the plaintiff to show cause as to why the award for loss of society should survive after Walker. The plaintiff subsequently submitted a supplemental memorandum and argued that dependents of persons killed in state territorial waters may recover loss-of-society damages in a maritime wrongful death action.

Both the motion to amend and/or modify the judgment and the plaintiff's response to the rule to show cause are presently before this Court.

## III. THE MOTION TO MODIFY AND/OR AMEND THE JUDGMENT

■ This Court found that the Braus vessel was a total of 20 percent negligent for violating two sections of the Inland Navigational Rules, section 2009(f) and section 2005. 33 U.S.C. §§ 2005, 2009(f). The Braus vessel was found 10 percent negligent for failing to maintain a proper lookout in violation of section 2005.[3] As previously stated in this Court's conclusion of law number 26, "the question of a proper lookout is one of fact to be determined from all of the circumstances." *Walker v. Braus*, 1991 WL 55877, at *7, 1991 U.S.Dist. LEXIS 4785, at *19 (E.D.La. Apr. 8, 1991), citing *Inland Oil and Transport Co. v. Ark–White Towing Co.*, 696 F.2d 321, 325 (5th Cir.1983), quoting *China Union Lines, Ltd. v. A.O. Anderson & Co.*, 364 F.2d 769 (5th Cir.1966), cert. denied, 386 U.S. 933, 87 S.Ct. 955, 17 L.Ed.2d 805 (1967).

The Braus vessel was also found to be 10 percent negligent for failing to sound the appropriate signal while approaching the blind bend in Turtle Bayou in violation of section 2009(f) of the Inland Navigational Rules.[4]

Defendant Braus, in his objection to plaintiff's motion, contests the finding that the collision was a blind bend collision, arguing that there is no blind bend on Turtle Bayou where the accident occurred. Braus maintains that if the vessels were operating within the prescribed inland rules, then the bend is not a blind bend. His theory is that Trahan was travelling at an excessive speed on the wrong side of the Bayou, and had

Trahan been following the proper inland rules, then the blind bend rule would not apply and Braus would not be 10 percent negligent for violating 33 U.S.C. § 2009(f). Braus suggests that a blind bend under the Inland Navigational Rules only exists if the bend is blind as to the vessels when the vessels are operating within and following the inland rules. Braus claims that if a vessel is operating in violation of the inland rules when a possible violation occurs, then as to the vessel there can be no violation of the blind bend rule. Braus also asks the Court to review the aerial photographs and diagrams of the accident scene.

This Court thoroughly reviewed all of the evidence prior to issuing its findings of fact and conclusions of law in its two opinions. Braus has not pointed to any clear errors in the previous findings of this Court. The Fifth Circuit on appeal did not disturb the findings of fault as to the Braus vessel and Braus has not submitted any new evidence which would alter this Court's finding that the Braus vessel was 20 percent at fault.

■ The Fifth Circuit's conclusion that Terra was a time charterer and therefore not liable for the negligence of the vessel compels this Court to conclude that Braus is responsible for the 20 percent negligence of his vessel. Accordingly, the motion of plaintiff to modify and/or amend the judgment to reflect that defendant Braus is 20 percent at fault for the death of Wade Trahan is granted.

## IV. DAMAGES FOR LOSS OF CONSORTIUM/LOSS OF SOCIETY UNDER GENERAL MARITIME LAW [5]

■ This case requires the Court to consider the breadth and scope of nonpecuniary

---

3. 33 U.S.C. § 2005 provides: "Every vessel shall at all times maintain a proper lookout by sight and hearing as well as by all available means appropriate to the circumstances and conditions so as to make a full appraisal of the situation and the risk of collision."

4. 33 U.S.C. § 2009(f) provides: "A vessel nearing a bend or an area of a narrow channel or fairway where other vessels may be obscured by an intervening obstruction shall navigate with particular alertness and caution and shall sound

the appropriate signal as prescribed in 34(e) [33 U.S.C. § 2034]." Section 2034(e) also provides: "[V]essels nearing a bend or an area of a channel or fairway where other vessels may be obscured by an intervening obstruction shall sound one prolonged blast."

5. The Fifth Circuit has recently stated that loss of consortium and loss of society damages are synonymous. *Nichols v. Petroleum Helicopters, Inc.*, 17 F.3d 119, 122 n. 4 (5th Cir.1994); see also *Skidmore v. Grueninger*, 506 U.S. 716, 728 n. 10

damages recoverable in a wrongful death action brought under general maritime law. Plaintiff argues that dependents of persons killed in state territorial waters may recover loss-of-society damages in a maritime wrongful death action. For the reasons that follow, this Court holds that damages for loss of society are not available in a general maritime wrongful death action involving a person killed while operating a fishing boat within state territorial waters. This conclusion comports well with Supreme Court jurisprudence and the trend within the Fifth Circuit toward denying loss-of-society damages in all maritime cases.

### A. Supreme Court Jurisprudence Regarding Loss-Of-Society Damages In A Maritime Wrongful Death Action.

The wrongful death action for persons killed in state territorial waters was born in *Moragne v. State Marine Lines*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). The *Moragne* Court, however, did not define the precise contours of the wrongful death cause of action, and in particular, the type of damages recoverable. *Id.* at 408, 90 S.Ct. at 1791. Nevertheless, the Court set forth two broad principles to guide lower courts who are called upon to determine the scope of the *Moragne* action.

The first is uniformity in federal maritime law. The *Moragne* Court stated that "recognition of a right to recover for wrongful death under general maritime law will assure uniform vindication of federal policies, removing the tensions and discrepancies that have resulted from the necessity to accommodate state remedial statutes to exclusively maritime substantive concepts." *Id.* at 401, 90 S.Ct. at 1788. The second consideration is to accord "special solicitude" to those persons (and their beneficiaries) who come within the admiralty jurisdiction of the federal courts. *Id.* at 387, 90 S.Ct. at 1780. According to the *Moragne* Court, " 'the humane and liberal character of proceedings in admiralty [is] to give than to withhold the remedy, when not required to withhold it by established and inflexible rules.' " *Id., quoting The Sea Gull*, 21 F.Cas. 909, 910 (C.C.Md.1865).

(5th Cir.1975). For purposes of clarity, this

With these two principles in mind, the Supreme Court in *Sea–Land Servs., Inc. v. Gaudet*, 414 U.S. 573, 585–90, 94 S.Ct. 806, 814–18, 39 L.Ed.2d 9 (1974), permitted dependents of a longshoreman killed in state territorial waters to recover damages for loss of society. The Court defined the term "society" quite broadly as a "range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection." *Id.* at 585, 94 S.Ct. at 814. In reaching its conclusion, the *Gaudet* Court reasoned that "our decision is compelled if we are to shape the remedy to comport with the humanitarian policy of the maritime law to show 'special solicitude' for those who are injured within its jurisdiction." *Id.* at 588, 94 S.Ct. at 816; *see also id.* at 577, 94 S.Ct. at 811. This rule was later extended to include dependents of injured longshoremen. *American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 276, 100 S.Ct. 1673, 1674, 64 L.Ed.2d 284 (1980). *Alvez* was also premised on the notion that persons that come within the admiralty jurisdiction of the federal courts deserve "special solicitude." *Id.* at 284–86, 100 S.Ct. at 1679–80.

However, in *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 622–26, 98 S.Ct. 2010, 2013–16, 56 L.Ed.2d 581 (1978), the Supreme Court declined to award loss-of-society damages to dependents of a longshoreman killed on the high seas. The Court reasoned that the Death on the High Seas Act ("DOHSA"), 46 U.S.C.App. §§ 761–768 (West Supp.1994), expressly limits damages to pecuniary loss, thereby precluding the Court from reading into the statute recovery for nonpecuniary losses. *Id.* at 625–26, 98 S.Ct. at 2015–16; *accord Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 216, 106 S.Ct. 2485, 2491, 91 L.Ed.2d 174 (1986). *Higginbotham*, however, created an inconsistency: If a person was killed in state territorial waters, *Gaudet* permitted recovery for loss of society; on the other hand, if the person had the misfortune of being killed on the high seas, loss-of-society damages were not recoverable.

Court will use the term loss of society.

This anomaly was rectified in *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32–33, 111 S.Ct. 317, 325–26, 112 L.Ed.2d 275 (1990), where the Supreme Court held that nondependents of a Jones Act seaman may not recover loss-of-society damages under general maritime law. In doing so, *Miles* limited the remedy available under *Gaudet* only to longshoremen killed in state territorial waters. *Id.* at 31, 111 S.Ct. at 325.[6] As such, the Court restored "a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law." *Id.* at 33, 111 S.Ct. at 326.

The Supreme Court's decision in *Miles* is important in two respects. First, the Supreme Court has indicated that the policy of providing uniformity in the type of damages recoverable in a maritime wrongful death action, whether brought pursuant to statute or the common law, is an important ingredient in determining whether certain types of damages—such as loss of society—are recoverable. 498 U.S. at 30–33, 111 S.Ct. at 324–26. Second, *Miles* represents a doctrinal shift away from a broad reading of "special solicitude" and toward a more narrow one. Rather than provide "special solicitude" according to the dictates of *Moragne*, *Gaudet*, and *Alvez*, the Supreme Court has indicated in *Miles* that uniformity in maritime law requires that those who sue under general maritime law receive no more "solicitude" than those who sue under the DOHSA or the Jones Act. *See, e.g., Miles*, 498 U.S. at 30–33, 111 S.Ct. at 324–26.[7]

Turning to the issue presented in this case, the Court notes that the Supreme Court has not specifically decided the question whether the dependents of a decedent who was neither a seaman nor a longshoreman can recover loss-of-society damages under general maritime law. After *Miles*, however, it is clear that uniformity in maritime law drives the determination of whether such damages are recoverable. With this in mind, the Court now looks to the case law within the Fifth Circuit to determine whether loss-of-society damages are available under general maritime law to the dependents of a person killed in state territorial waters who was neither a seaman nor a longshoreman.

**B.   *The Trend Within The Fifth Circuit Regarding Recovery For Loss Of Society Under General Maritime Law.***

Although the Fifth Circuit has not addressed the question whether dependents of a nonseaman killed within state territorial waters can recover loss-of-society damages, the Fifth Circuit has addressed the issue of loss-of-society damages on four occasions since the Supreme Court decided *Miles*. In three of these cases, the Fifth Circuit relied on *Miles* and denied recovery for loss of society to dependents of longshoremen and seamen. In *Nichols v. Petroleum Helicopters, Inc.*, 17 F.3d 119, 122–23 (5th Cir.1994), the Fifth Circuit declined to permit the dependents of a longshoreman killed on the high seas to recover for loss of society. The court reasoned that because the decedent did not meet the requirements of *Gaudet* or *Alvez* (longshoreman killed or injured within state territorial waters), loss-of-society damages would be unavailable to the decedent's dependents. *Id.* Similarly, in *Michel v. Total Transp., Inc.*, 957 F.2d 186, 191 (5th

---

**6.**   One court has referred to *Gaudet* in the following terms: "[*Gaudet*] has therefore been condemned to a kind of legal limbo: limited to its facts, inapplicable on its facts, yet not overruled." *Miller v. American President Lines, Ltd.*, 989 F.2d 1450, 1459 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993). Another court has held that after *Miles*, "*Gaudet* damages are no longer recoverable by the survivors of longshore workers injured or killed in territorial waters." *Smallwood v. American Trading & Transp. Co.*, 839 F.Supp. 1377, 1385 (N.D.Cal.1993).

**7.**   Prior to *Miles*, the Supreme Court and the Fifth Circuit appeared to take a different view. In

*Alvez*, the Supreme Court stated: "[T]he liability schemes incorporated in [the] DOHSA and the Jones Act should not be accorded overwhelming analogical weight in formulating remedies under general maritime law." 446 U.S. at 283, 100 S.Ct. at 1678; *accord Cruz v. Hendy Int'l Co.*, 638 F.2d 719, 725 (5th Cir.1981); *see also Hlodan v. Ohio Barge Line, Inc.*, 611 F.2d 71, 75 (5th Cir. 1980) (the DOHSA and the Jones Act do not limit the damages recoverable in a *Moragne* action); *Skidmore*, 506 F.2d at 728 (awarding loss-of-society damages and quoting language from *Gaudet* which suggests that damage awards ought to be guided by the "humanitarian policy" of general maritime law).

Cir.1992), the Fifth Circuit held that the dependents of a Jones Act seaman could not recover loss-of-consortium damages for injuries the seaman suffered in the course of his employment. The Fifth Circuit also declined to award loss-of-society damages to the wife of a seaman injured within state territorial waters. *Murray v. Anthony J. Bertucci Construction Co., Inc.*, 958 F.2d 127, 129–32 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 190, 121 L.Ed.2d 134 (1992); *accord Horsley v. Mobil Oil Corp.*, 15 F.3d 200, 202–03 (1st Cir.1994); *Lollie v. Brown Marine Serv., Inc.*, 995 F.2d 1565, 1565 (11th Cir. 1993) (per curiam); *Smith v. Trinidad Corp.*, 992 F.2d 996, 996 (9th Cir.1993) (per curiam). The one case in which the Fifth Circuit awarded loss-of-society damages involved a longshoreman killed within Louisiana territorial waters, thereby entitling the dependents to damages pursuant to *Gaudet. Randall v. Chevron U.S.A., Inc.*, 13 F.3d 888, 903 (5th Cir.1994). The *Randall* court found that *Gaudet* is still good law within the Fifth Circuit and that the case came "squarely within [*Gaudet's*] ambit." *Id.*

A similar trend toward denying loss-of-society damages under general maritime law appears among the lower courts within the Fifth Circuit. In *Earhart v. Chevron U.S.A., Inc.*, 852 F.Supp. 515, 515–16 at *1–*2 (E.D.La.1993) (Clement, J.), the district court refused to award the wife of a nonseaman injured on a fishing vessel within state territorial waters loss-of-society damages. In *Carnival Cruise Lines v. Red Fox Indus., Inc.*, 813 F.Supp. 1185, 1187 (E.D.La.1993) (Clement, J.), the district court refused to permit dependent relatives of an injured seaman to recover loss-of-society damages against a third party manufacturer. Accord-

ing to the court in *Carnival Cruise Lines*, a contrary conclusion would "strike a blow to the policy [of uniformity] *Miles* sought to establish." *Id.* Similarly, in *Ellender v. John E. Graham & Co.*, 821 F.Supp. 1136 (E.D.La.1992) (Feldman, J.), the district court declined to permit an injured spouse to recover loss-of-consortium damages against a third-party nonemployer on the ground that "the rationale in *Miles* extends to a nonemployer." *Id.* at 1136. Finally, in *In re Waterman S.S. Corp.*, 780 F.Supp. 1093, 1094–95 (E.D.La.1992) (Sear, C.J.), the district court held that "consortium type claims cannot be recovered for the wrongful death of a seaman, whether under either the Jones Act or general maritime law." [8]

There appears to be only one decision within the Fifth Circuit which permitted the dependents of a nonseaman killed within state territorial waters to recover loss-of-society damages under general maritime law, but that decision does not survive *Miles.* In *Skidmore v. Grueninger*, 506 F.2d 716, 727–29 (5th Cir.1975), the Fifth Circuit held that the spouse and children of a person killed on a pleasure boat in West Virginia territorial waters could recover for loss of society. The *Skidmore* court relied on the Supreme Court's decision in *Gaudet* and reasoned that loss-of-society damages are recoverable because of "the 'humanitarian policy of the maritime law to show "special solicitude" for those who are injured within its jurisdiction.'" *Id.* at 728, *quoting Gaudet*, 414 U.S. at 588, 94 S.Ct. at 816. However, *Skidmore* is no longer viable after *Miles. Miles* specifically limited the remedy available under *Gaudet* to longshoremen killed within state territorial waters. *Miles*, 498 U.S. at 31, 111 S.Ct. at 325. *Skidmore* relied exclusively on

---

8. Other recent district court decisions which have refused to permit recovery for loss of society include: *Reynolds v. Zapata Off–Shore Co.*, 796 F.Supp. 1015, 1016 (S.D.Tex.1992); *Haltom v. Lykes Bros. Steamship Co., Inc.*, 771 F.Supp. 179, 180–81 (E.D.Tex.1991) (dependent widow of seaman); *Duplantis v. Texaco, Inc.*, 771 F.Supp. 787, 788 (E.D.La.1991) (seaman's wife cannot recover loss-of-consortium damages under general maritime law); *Cater v. Placid Oil Co.*, 760 F.Supp. 568, 569–71 (E.D.La.1991) (spouse of injured Jones Act seaman cannot recover loss-of-consortium damages under general maritime law); *Turley v. Co–Mar Offshore Marine Corp.*, 766 F.Supp. 501, 502 (E.D.La.1991) (wife of Jones Act seaman); *West v. Zapata Gulf Marine Corp.*, 766 F.Supp. 502, 502–03 (E.D.La.1991) (loss-of-consortium damages unavailable in personal injury action brought under general maritime law); *Breland v. Western Oceanic, Inc.*, 755 F.Supp. 718, 719 (W.D.La.1991) (wife and children of injured seaman); *Anglada v. Tidewater, Inc.*, 752 F.Supp. 722, 723–25 (E.D.La.1990) (Feldman, J.) ("[L]oss of society or consortium damages must be rejected in the context of personal injury and wrongful death unseaworthiness claims.").

the Supreme Court's decisions in *Gaudet*, and because the decedent in *Skidmore* was not a longshoreman, the Court finds that *Skidmore* is no longer authority for the proposition that dependents may recover loss-of-society damages under general maritime law.

■ Indeed, the trend within the Fifth Circuit indicates that loss-of-society damages are recoverable only in cases that fit the fact pattern of *Gaudet* or *Alvez*, namely, where a longshoreman is killed or injured within state territorial waters. *See, e.g., Randall v. Chevron U.S.A.*, 13 F.3d 888, 903–04 (5th Cir. 1994) (permitting the dependents of a longshoreman to recover loss-of-society damages). Accordingly, it would be anomalous for this Court to allow loss-of-society damages in a case such as this, which involves a nonseaman killed while operating a fishing boat in state territorial waters. The Court therefore holds that the dependents of a nonseaman killed while operating a fishing boat within state territorial waters may not recover damages for loss of society under general maritime law.

The Court recognizes that the conclusion reached here implies that the dependency requirement for recovering loss-of-society damages under general maritime law is no longer viable. *See Randall*, 13 F.3d at 903; *Miles v. Melrose*, 882 F.2d 976, 988–89 (5th Cir.1989), *aff'd sub nom. Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990); *Sistrunk v. Circle Bar Drilling Co.*, 770 F.2d 455, 460 (5th Cir.1985), *cert. denied*, 475 U.S. 1019, 106 S.Ct. 1205, 89 L.Ed.2d 318 (1986); *Truehart v. Blandon*, 672 F.Supp. 929, 938 (E.D.La.1987). However, the Supreme Court's concern for uniformity in maritime law in *Miles* and the trend

within the Fifth Circuit compel this result. *See, e.g., Haltom*, 771 F.Supp. at 180–81 (the Supreme Court in *Miles* did not distinguish between dependents and nondependents when it denied recovery for loss of society).[9]

Ignoring the trend within the Fifth Circuit, plaintiff relies on *Wahlstrom v. Kawasaki Heavy Indus., Ltd.*, 4 F.3d 1084 (2d Cir. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1060, 127 L.Ed.2d 380 (1994), for her contention that the dependents of nonseamen killed in state territorial waters may recover damages for loss of society under general maritime law. *Wahlstrom*, however, is unhelpful to plaintiff in this case. The methodology employed by the *Wahlstrom* court actually supports the conclusion reached here. Critical to the Second Circuit's conclusion in *Wahlstrom* was the assertion that permitting nondependents to recover for loss-of-society would impermissibly undermine the uniformity requirement of maritime law by "expand[ing] the class of beneficiaries of nonseamen who may recover for loss of society in the aftermath of the Supreme Court's denial of such recovery [in *Miles* ] to the beneficiaries of seamen." 4 F.3d at 1092. Therefore, *Wahlstrom* suggests that in determining whether to award loss-of-society damages under general maritime law, courts must look to the recovery available under the DOHSA and the Jones Act so that recovery for nonpecuniary damages is uniform for the DOHSA, the Jones Act, and general maritime law.[10] Accordingly, because the Fifth Circuit has specifically declined to permit dependents of Jones Act seamen to recover loss-of-society damages, *Michel*, 957 F.2d at 191; *Murray*, 958 F.2d at 129–32; and because the dependents of persons who sue under the

---

9. Of course, the dependency requirement remains in cases involving longshoremen killed or injured within state territorial waters. *Gaudet*, 414 U.S. at 577–83, 94 S.Ct. at 811–14; *Alvez*, 446 U.S. at 280–86, 100 S.Ct. at 1677–80; *Randall*, 13 F.3d at 903–04.

10. This has certainly been the position of the Fifth Circuit in cases involving nondependents who wish to recover loss-of-society damages. The Fifth Circuit's decision in *Sistrunk* is illustrative:

If this court were to hold that the parents could recover for loss of society in this case, we should create vagaries in admiralty juris-

diction that *Moragne* was designed to destroy: first, where the death occurs in territorial waters, parents like those in this case could recover for loss of society on the basis of unseaworthiness under *Moragne* but not for negligence under the Jones Act, [citation]; and second, and even more anomalous, parents similarly situated to those in this case would have a cause of action for loss of society if the death occurred in territorial waters but not if the death occurred on the high seas, *see* DOHSA [citation]....

770 F.2d at 459.

DOHSA cannot recover nonpecuniary damages such as loss of society, *Higginbotham,* 436 U.S. at 622–26, 98 S.Ct. at 2013–16, this Court would frustrate the goal of uniformity by permitting dependents of a nonseaman to recover damages that the beneficiaries of seamen—the wards of admiralty—cannot recover.

The Ninth Circuit has disagreed with the Second Circuit's decision in *Wahlstrom,* asserting that *Wahlstrom*'s reading of the uniformity requirement in *Miles* is too broad. *Sutton v. Earles,* 26 F.3d 903, 916–17 (9th Cir.1994). In *Sutton,* five persons were killed and four persons injured when a pleasure craft collided with a buoy in California territorial waters. *Id.,* 26 F.3d at 906. The district court awarded the beneficiaries of the decedents damages for loss of society regardless of whether the beneficiaries were dependent on the decedents. *Id.,* 26 F.3d at 914, 920. The Ninth Circuit affirmed this portion of the district court's decision, concluding that the dependency requirement for recovering loss-of-society damages is inconsistent with the humanitarian policy of providing special solicitude to those that come within the admiralty jurisdiction of the federal courts. *Id.,* 26 F.3d at 919–20. The court reasoned: "The fact that the death of a seaman in territorial waters leads to recovery only of pecuniary damages is dictated by statute, *Miles,* 498 U.S. at 32–33, 111 S.Ct. at 325–26, and that statute does not limit recoveries for the deaths of non-seamen." *Id.,* 26 F.3d at 917; *see also id.,* 26 F.3d at 916 ("[T]he results in *Higginbotham* and *Miles*

were clearly dictated by statute, and neither statute limits the damages recoverable for death in territorial waters that were authorized by *Gaudet.*").

The Court declines to follow *Sutton* because it is inconsistent with the Supreme Court's decision in *Miles* and with the trend within the Fifth Circuit toward eliminating loss-of-society damages under general maritime law.[11] To begin with, *Sutton* creates a non-uniform rule of recovery within the Ninth Circuit, precisely what the Supreme Court counseled against in *Miles.* Just one year ago, in *Smith v. Trinidad,* 992 F.2d 996, 996 (9th Cir.1993), the Ninth Circuit held that the uniformity requirement in *Miles* compelled the conclusion that the spouse of an injured seaman may not recover loss-of-society damages under general maritime law. *See also Newhouse v. United States,* 844 F.Supp. 1389, 1393–94 (D.Nev.1994) (beneficiaries of nonseaman killed in state territorial waters cannot recover nonpecuniary damages such as future economic loss in a survival action because *Miles* "has limited the availability of damages under a *Moragne* wrongful death action to those that reflect pecuniary losses."). *Sutton* therefore creates an anomaly within the Ninth Circuit: The beneficiaries of seamen—traditionally the wards of admiralty—cannot recover damages that beneficiaries of nonseamen are permitted to recover. The Supreme Court's decision in *Miles* was designed to eliminate these kinds of inconsistent results. *Miles,* 498 U.S. at 30–33, 111 S.Ct. at 324–26.[12] Finally, the

---

**11.** The *Sutton* court did not refer at all to the Fifth Circuit's decision in *Walker,* 995 F.2d 77.

**12.** The *Sutton* court side-stepped the uniformity requirement of *Miles* by asserting that "[w]e do not consider ourselves free to give such weight to the interest of uniformity, in light of *Gaudet*'s explicit acknowledgement that it was creating a non-uniform category of damages in territorial waters, *Gaudet,* 414 U.S. at 588 n. 22, 94 S.Ct. at 816 n. 22, and the acknowledgements of non-uniformity in *Higginbotham,* 436 U.S. at 624, 98 S.Ct. at 2014," (fn. omitted). This Court disagrees with this analysis. To begin with, *Higginbotham* allegedly posed only a "minor" threat to uniformity. 436 U.S. at 624, 98 S.Ct. at 2014. By contrast, *Sutton* creates a significant discrepancy within the Ninth Circuit by permitting the beneficiaries of nonseamen to recover damages that the beneficiaries of seamen cannot

recover. Finally, even assuming *Gaudet* and *Higginbotham* stand for the proposition that non-uniform categories of damages are acceptable in federal maritime law, the Supreme Court's recent concern in *Miles* with creating uniform categories of damages should serve as the proper guide for lower courts. In fact, a district court within the Ninth Circuit concluded that *Miles'* limitation on recovering non-pecuniary damages is not "limited to those actions involving seamen." *Newhouse,* 844 F.Supp. at 1394. Otherwise, "such a holding would lead to the anomalous result that seamen—those who are entitled the greatest protection under maritime law—would be afforded a lesser degree of protection than non-seamen." *Id.*

The *Sutton* court also stated that "[w]e ... do not consider controlling the statement in *Miles* that 'the holding of *Gaudet* ... applies only to

trend within the Fifth Circuit is clearly in the direction of eliminating loss of society as an element of damages in all maritime cases. Therefore, in the interest of uniformity, this Court follows that trend and declines to follow *Sutton.*

The Court also recognizes that lower courts in other circuits have come to a different conclusion than that reached in this case, but the Court finds those decisions inconsistent with the Supreme Court's decision in *Miles* and the trend within the Fifth Circuit. In *Emery v. Rock Island Boatworks, Inc.,* 847 F.Supp. 114, 116–18 (C.D.Ill.1994), a district court permitted the spouse of an injured passenger to recover damages for loss of society in a negligence action against the owner of the boat.[13] The *Emery* court reasoned that "[i]n situations ... where the plaintiff does not have a cause of action available against the defendant under the DOHSA or the Jones Act, the concerns for uniformity, as expressed in *Miles* and *Higginbotham,* simply do not exist." *Id.* at 118. The court held that the uniformity requirement of *Miles* only applied in cases where the statutory and general maritime law causes of action overlap. *Id.* at 117. *Emery* was followed by *Schumacher v. Cooper,* 850 F.Supp. 438, 453–54 (D.S.C.1994), where the dependents of a nonseaman were permitted to recover loss-of-society damages in a personal injury negligence action

brought under general maritime law. This Court finds that *Emery* and *Schumacher* read the Supreme Court's decision in *Miles* much too narrowly. At the very least, *Miles* represents a decisive endorsement of the importance of achieving uniformity in maritime law, especially in cases involving the type of damages recoverable by beneficiaries who come within the admiralty jurisdiction of the federal courts. Therefore this Court declines to follow the holdings of *Emery* and *Schumacher.*

In *In re Morehead Marine,* 844 F.Supp. 1193, 1197 (S.D.Ohio 1994), the court permitted survivors of nonseamen killed in state territorial waters to recover nonpecuniary damages, such as loss of society, under general maritime law. The court offered two reasons for its decision. First, the court reasoned that permitting recovery of nonpecuniary damages furthers the " 'humanitarian policy of the maritime law to show "special solicitude" for those who are injured within its jurisdiction.' " *Id.* Next, the court asserted that because no federal statute expressly limited recovery to pecuniary damages, the plaintiffs could recover nonpecuniary damages. *Id.; see also Mussa v. Cleveland Tankers,* 802 F.Supp. 84, 86–87 (E.D.Mich.1992) (limiting *Miles* to its facts).

The Court finds that the decision in *Morehead Marine* is premised on an overbroad conception of "special solicitude." [14] *Miles*

longshoremen.' 498 U.S. at 39, 111 S.Ct. at 328. The point that the court was making was that *Gaudet* does not apply to seamen." 26 F.3d at 917 n. 17. This restrictive reading of *Miles*'s limitation of *Gaudet* is novel and inconsistent with decisions within the Second, Fifth, and Sixth Circuits as well as a decision by a district court within the Ninth Circuit itself. *See Wahlstrom,* 4 F.3d at 1091–92; *Nichols,* 17 F.3d at 122–23; *Randall,* 13 F.3d at 902–03; *Murray,* 958 F.2d at 130–31; *Miller,* 989 F.2d at 1459; *Smallwood,* 839 F.Supp. at 1385.

**13.** The *Emery* court aptly characterized the confusion in this area of maritime law, and stated:

In researching this issue, the Court has uncovered a labyrinth of factual scenarios and legal theories from various courts yielding different results on whether loss of society claims may be brought under admiralty law. Some courts have allowed and some courts have precluded such claims under admiralty law depending on the legal theory and the specific facts alleged in the case. For example, some courts have

distinguished admiralty claims brought under statutory as opposed to common law theories, brought by seamen as opposed to longshoremen, brought by neither seamen nor longshoremen, brought against employers as opposed to third parties, and brought as a result of injuries occurring in territorial waters as opposed to on the high seas. The significance of these various distinctions have led to courts reaching different results on the issue of awarding loss of society damages under admiralty law.

847 F.Supp. at 116.

**14.** In addition, none of the cases relied upon by the *Morehead Marine* court are authority for the proposition that dependents of persons killed in state territorial waters may recover loss-of-society damages. The remedy available under *Gaudet* has been limited to longshoremen killed in state territorial waters, *Miles,* 498 U.S. at 31, 111 S.Ct. at 325, and the decedent in *Morehead Marine* was not a longshoreman. Moreover, in *Complaint of Cambria Steamship Co.,* 505 F.2d

makes it clear that persons who sue under general maritime law receive no more—and no less—"solicitude" than those that come within the scope of the DOHSA or the Jones Act. *Miles*, 498 U.S. at 30–33, 111 S.Ct. at 324–26. More importantly, however, *Morehead Marine*'s examination of the issue is inconsistent with the analytical framework set out in *Miles*. *Miles* teaches that in determining whether to award loss-of-society damages, courts must look to the DOHSA and the Jones Act for guidance so that recovery for nonpecuniary damages remains uniform across maritime law. 498 U.S. at 30–33, 111 S.Ct. at 324–26. The court in *Morehead Marine* failed to do so. This Court therefore disagrees with the analysis in *Morehead Marine*.

Finally, in *Powers v. Bayliner Marine Corp.*, 855 F.Supp. 199, 202 (W.D.Mich.1994); *Petition of Cleveland Tankers, Inc.*, 843 F.Supp. 1157, 1158–60 (E.D.Mich.1994); and *Sugden v. Puget Sound Tug & Barge Co.*, 796 F.Supp. 455, 457 (W.D.Wash.1992), the courts held that loss-of-society damages are recoverable under general maritime law in an action against a non-employer. Because the plaintiffs had sued a non-employer, the courts concluded that the uniformity requirement expressed in *Miles* (which involved a claim against a Jones Act employer) was inapplicable. *Id.* However, *Powers, Cleveland Tankers,* and *Sugden* read *Miles* too narrowly. The concern in *Miles* for uniformity in maritime law must apply with equal force in cases involving non-employers, otherwise *Miles'* concern for uniformity would be hollow. Indeed, district courts in this circuit have already expressly held that the uniformity requirement in *Miles* compels the conclusion that loss-of-society damages are not available in a general maritime action brought against a non-employer. *Ellender,* 821 F.Supp. at 1136–37; *see also Carnival Cruise Lines,* 813 F.Supp. at 1187 ("Allowing plaintiffs to recover loss of society damages against [a third party manufacturer] when they would not otherwise be recoverable against [the injured seaman's employer] would strike a blow to the policy *Miles* sought to establish.").

## CONCLUSION

The Court is mindful of the traditional "twin aims" of maritime law—achieving uniformity and providing "special solicitude" to those that come within the admiralty jurisdiction of the federal courts. *See Miles,* 882 F.2d at 987; *Truehart,* 672 F.Supp. at 937. However, after the Supreme Court's decision in *Miles,* uniformity appears to carry the day in federal maritime law. The trend within the Fifth Circuit is toward refusing to award loss-of-society damages in cases brought under general maritime law. Consistent with this trend, and considering the Fifth Circuit's clear instructions to this Court in *Walker,* 995 F.2d at 82, this Court holds that loss-of-society damages are unavailable in a general maritime wrongful death action involving the operator of a fishing boat within state territorial waters.

Accordingly,

IT IS THE ORDER OF THE COURT that the motion of plaintiff, Sharon Joyce Walker, individually and on behalf of her minor children, Jason Dwayne Trahan and Josh Michael Trahan, to modify and/or amend the judgment entered on May 7, 1992, by assessing 20 percent of the fault of the accident which killed Wade J. Trahan, the plaintiff's husband, against defendant, Armogene Braus, be, and the same is hereby GRANTED.

IT IS THE FURTHER ORDER OF THE COURT that the damages of $32,000.00 ($160,000.00 × 20%) awarded to plaintiff, Sharon Joyce Walker, individually and on behalf of her minor children, Jason Dwayne Trahan and Josh Michael Trahan, for past and future loss of society ($3,520.00 + $28,480.00 = $32,000), be, and the same are here-

517 (6th Cir.1974), *cert. denied,* 420 U.S. 975, 95 S.Ct. 1399, 43 L.Ed.2d 655 (1975), *Daughenbaugh v. Bethlehem Steel Corp.,* 891 F.2d 1199 (6th Cir.1989), and *Garner v. Dravo Basic Materials Co.,* 768 F.Supp. 192 (S.D.W.Va.1991), the courts did not even address the question whether loss-of-society damages are recoverable under general maritime law. In *Cambria Steamship* and *Daughenbaugh,* the courts merely recited the broad "humanitarian policy" language found in *Moragne* and *Alvez.* *Cambria Steamship,* 505 F.2d at 522; *Daughenbaugh,* 891 F.2d at 1204.

by STRICKEN from the Court's judgment of May 7, 1992. (Doc. 188).

IT IS THE FURTHER ORDER OF THE COURT that an amended judgment be entered in favor of plaintiff, Sharon Joyce Walker, individually and on behalf of her minor children, Jason Dwayne Trahan, and Josh Michael Trahan, and against defendant, Armogene Braus, in the amount of $18,620.24, plus prejudgment interest from the date of judicial demand until the date of the original judgment, May 7, 1992, at the rate set forth in La.Civ.Code art. 2924, plus interest from the date of the original judgment, May 7, 1992, until paid at the rate set forth in 28 U.S.C. § 1961.

IT IS THE FURTHER ORDER OF THE COURT that an amended judgment be entered in favor of plaintiff, Sharon Joyce Walker, individually and on behalf of her minor children, Jason Dwayne Trahan, and Josh Michael Trahan, and against defendant, Armogene Braus, in the amount of $54,322.51, plus interest from the date of the original judgment, May 7, 1992, until paid at the rate set forth in 28 U.S.C. § 1961.

The Court will prepare an amended judgment in conformity with this opinion.